UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CR-00464-D-1

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM ROBERT JEFFERY | MOTION TO SUPPRESS |

COMES NOW the defendant, William Robert Jeffery, by and through undersigned counsel, and moves this Court for an Order suppressing any and all evidence seized from an illegal search by both Microsoft Bing Image and the National Center for Missing and Exploited Children (NCMEC) of the contents of Mr. Jeffery's search engine queries, the contents of the results of said search engine queries, and the hash values associated with the results of the search engine queries In support:

**PROCEDRUAL HISTORY**

On or about March 26, 2020, Mr. Jeffery was arrested and charged with three counts of (f) Sexual Exploitation of a Minor in Wake County File No. 20CR006429 and one additional count of (f) Sexual Exploitation of a Minor in Wake County File No. 20CR006430. Mr. Jeffery immediately bonded out of custody on those charges and returned to reside at his home in Raleigh while the state court charges were pending. Mr. Jeffery's charges were indicted to Wake County Superior Court on or about April 21, 2020. Shortly thereafter, the undersigned received notice from the Wake County District Attorney's Office that there was federal interest in Mr. Jeffery's case. The undersigned immediately communicated this information to Mr. Jeffery and reached out to the U.S. Attorney's Office for the Eastern District of North Carolina to discuss Mr. Jeffery's case.

At the time of his arrest, Mr. Jeffery was working as the Sales Manager for Truswood, Inc. (Truswood), a floor and roof truss manufacturer with offices in Raleigh, North Carolina and Newport

News, Virginia. On or about March 17, 2020, law enforcement seized Mr. Jeffery's computer and informed Mr. Jeffery he was under investigation. Knowing he was under investigation, Mr. Jeffery continued to work at Truswood and reside in his Raleigh home. He never attempted to flee. On March 26, 2020, Mr. Jeffery was arrested and, solely because of this arrest, terminated from his job at Truswood. However, despite being let go from his job, Mr. Jeffery spent much of his time (after bonding out) assisting his former colleagues (who had taken over his client accounts). Mr. Jeffery continued to mentor his former employees —without pay— to ensure that both they and the company were not impacted negatively by his arrest.

Mr. Jeffery's case was indicted by a federal grand jury on October 15, 2020.[1] Specifically, Mr. Jeffery was charged with possession of child pornography in violation of Title 18, United States Code, Section 2252A(a)(5)(B) –stemming from the same allegations contained in the State court proceedings. This federal indictment was announced by a press release[2] issued by the U.S. Attorney's Office on October 16, 2020, which was subsequently picked up by other local media outlets. Despite the undersigned's earlier attempts to communicate with the U.S. Attorney's Office, the undersigned was not notified of the indictment until the press release was issued. After seeing the press release, the undersigned again reached out to the U.S. Attorney's Office and the parties agreed that Mr. Jeffery would voluntarily surrender himself to the custody of the United States Marshal's Service (USMS) on October 21, 2020 at the federal courthouse in Raleigh, North Carolina.

On October 21, 2020, the undersigned accompanied Mr. Jeffery to the courthouse where he taken into custody by the USMS without incident. Mr. Jeffery then appeared before Magistrate Judge

---

[1] The state court charges were subsequently dismissed on October 21, 2021.
[2] William Jeffery of Raleigh Indicted on Child Pornography Charge, 2020, https://www.justice.gov/usao-ednc/pr/william-jeffery-raleigh-indicted-child-pornography-charge (last visited April 20, 2021).

Robert T. Numbers II for his initial appearance, where the Government moved for his pretrial detention. (D.E. 8). Magistrate Judge Numbers temporarily granted the Government's Motion for Detention and scheduled a Detention Hearing for October 26, 2020. (D.E. 9).

A pretrial services report was filed on October 26, 2020. (D.E. 12). That same day, a Detention Hearing was held before Magistrate Judge Numbers, who allowed the Government's Motion for Detention. (D.E. 14). Magistrate Judge Numbers found by clear and convincing evidence that there was no condition or combination of conditions the Court could impose to reasonably assure the safety of the community if Mr. Jeffery were released. (D.E. 14).

The undersigned counsel received initial discovery in this matter on or about November 6, 2020. On December 2, 2020, a Superseding Indictment was filed in this matter, but did not change the substantive charge against Mr. Jeffery. (D.E. 18).

On April 12, 2021, Mr. Jeffery, through undersigned counsel, filed an Emergency Motion to Re-Open Detention Proceedings citing the jail's inability to adequately care for his medical needs, especially after contracting COVID-19. (D.E. 29). This Court Ordered the Government to issue a response by April 27, 2021 and allowed Mr. Jeffery to file a reply with a proposed release plan by April 29, 2021. (D.E. 30). The Government filed a Response in Opposition to Defendant's Emergency Motion to Re-Open Detention Proceedings on April 27, 2021. (D.E. 31). Defendant filed a proposed release plan citing two potential third-party custodians with whom he could reside if released. (D.E. 32). On May 5, 2021, this Court denied Defendant's Emergency Motion. (D.E. 33).

Mr. Jeffery was eventually moved to Sampson County Jail, another detention facility within the Eastern District of North Carolina. After several unsuccessful attempts were made to consult with Mr. Jeffery at this new location, the undersigned filed a Motion for Meaningful Access to Defendant on July 23, 2021 asking the Court to direct the United States Marshals Service to move Mr. Jeffery to

a facility with better communication and visitation policies. (D.E. 40). On July 26, 2021, this Court issued an Order denying the undersigned's Motion for Meaningful Access to Defendant without prejudice and directed undersigned counsel to make contact with Captain Frederick Hayes or Lieutenant Bobby Smith of the Sampson County Sheriff's Office directly to discuss access to Mr. Jeffery. (D.E. 41). The Sampson County Jail then made accommodations for undersigned counsel to meet with Mr. Jeffery.

Mr. Jeffery was recently transferred to the Bladen County Jail, another facility in the Eastern District of North Carolina. Mr. Jeffery has remained in custody since October 21, 2020. The current pretrial motions deadline is November 16, 2021 and the arraignment in this matter is scheduled for the December 6, 2021 term of court. (D.E. 44).

## RELEVANT FACTS

On October 19, 2019 and January 3, 2020, Microsoft Bing Image notified the National Center for Missing and Exploited Children (NCMEC) that a user with IP Addresses 2600:1700:13c0:9c30:a597:9f5a:813:fa6e and 2600:1700:13c0:9c30:c457:e7b4:aff9:2ba2 had uploaded files purportedly depicting child pornography. (Bates 130). Upon receipt of the files, NCMEC ran certain automated processes in an attempt to gather additional information about the suspect IP Address. (Bates 60). One of the automated processes undertaken by NCMEC is a "Geo-Lookup" which determines where a particular IP Address is located geographically. *Id*. NCMEC determined the IP Addresses submitted by Microsoft Bing Image in this matter were located in Raleigh, North Carolina. *Id*. This "Geo-Lookup" process conducted by NCMEC also determined the IP Addresses sent by Microsoft Bing Image were associated with an AT&T U-Verse account. (Bates 61). Also upon receipt of the images, NCMEC viewed them and compared their hash values to hash

values known by NCMEC to represent imagines of child abuse material. (Bates 62). NCMEC categorized the images into different categories of suspected child pornography. (Bates 60).

NCMEC then forwarded these Cyber Tips from Microsoft Bing Image to the North Carolina Internet Crimes against Children Task Force (ICAC) within the Raleigh Police Department. (Bates 130). ICAC investigators subpoenaed records from AT&T for the IP Addresses and identified the subscriber as Mr. Jeffery with an address in Raleigh, NC 27612. (Bates 130). Raleigh Police Detective Morse reviewed the images turned over by NCMEC and determined the file named 874ccb1a-b1ed-4875-84d6-1b5922807577.jpg is an image "depicting an unknown adult make inserting his penis into the anus of an unknown minor female child victim (approximately 11-13 years old)." (Bates 130-131). Detective Morse described the second file named 7f65782e-d606-4e05-9bd6-7a4e36a52627.jpg as "an image depicting an unknown minor female child victim (approximately 11-13 years old) displaying her breasts and genitalia." (Bates 131). Detective Morse then sought for and obtained a search warrant for Mr. Jeffery's residence in Raleigh, NC. *Id*. On or about March 18, 2020, Detective Morse and FBI Special Agent Tyson Hanish went to Mr. Jeffery's residence in Raleigh, NC to execute the search warrant. *Id*. Mr. Jeffery answered the door upon Detective Morse and Special Agent Hanish's arrival. *Id*. Mr. Jeffery denied possessing any child pornography and provided passwords to all his electronic devices. *Id*. During the initial search of Mr. Jeffery's devices, no images of child pornography were discovered. (Bates 132). At the conclusion of the search, several electronic storage devices were seized and retained by Special Agent Hanish with the FBI for further forensic examination. *Id*. The police report prepared by Detective Morse indicates child pornography was located during a forensic review of the items seized pursuant to the search warrant. (Bates 133). Based on this forensic review, Mr. Jeffery was arrested on March 26, 2020 and charged with four counts of sexual exploitation of a minor in Wake County File Nos. 20CR006429-30. *Id*. After Mr.

Jeffery's arrest, additional tips from NCMEC were received by law enforcement in reference to Mr. Jeffery downloading images from Microsoft Inc. *Id.*

### **MICROSOFT BING IMAGE IS A GOVERNMENT ENTITY OR, IN THE ALTERNATIVE, MICROSOFT BING IMAGE IS A GOVERNMENT AGENT**

In beginning with the question of whether Microsoft Bing Image is a Government Entity, the Supreme Court has suggested that "the calling card of a governmental entity is whether it is invested with any portion of political power, partaking in any degree in the administration of civil government, and performing duties which flow from the sovereign authority." *Trustees of Dartmouth College v. Woodworth*, 17 U.S. (4 Wheat.) 518, 634 (1819). That an entity is incorporated does not "prevent it from also qualifying as a governmental entity: the dispositive question isn't one of form but function, turning on what the entity does, not how it is organized." *United States v. Ackerman*, 831 F. 3d. 1292, 1295 (10th. Cir. 2016).

Even if Microsoft Bing Image is not a governmental entity, it was certainly acting as an agent of the government in this case. Determining whether the requisite agency relationship exists "necessarily turns on the degree of the Government's participation in the private party's activities, . . . a question that can only be resolved 'in light of all the circumstances.'" *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 614-15 (1989) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971)). This is a "a fact-intensive inquiry that is guided by common law agency principles." *United States v. Ellyson*, 326 F.3d 522, 527 (4th Cir. 2003) (citation omitted). "In order to run afoul of the Fourth Amendment, therefore, the Government must do more than passively accept or acquiesce in a private party's search efforts." *United States v. Jarrett*, 338 F.3d 339 (4th. Cir. 2003). Instead, "there must be some degree of Government participation in the private search." *Id*. In *Skinner*, for example, the Supreme Court found that private railroads, in performing drug tests on their employees in a manner expressly encouraged and authorized under Government

regulations, acted as Government agents sufficient to implicate the Fourth Amendment. *Skinner*, 489 U.S. at 615-16. As the Court concluded, "specific features of the regulations combine to convince us *that the Government did more than adopt a passive position toward the underlying private conduct*." *Id.*, 489 U.S. at 615 (emphasis added).

Following the Supreme Court's guidance on the matter, the various Courts of Appeals have identified two primary factors that should be considered in determining whether a search conducted by a private person constitutes a Government search triggering Fourth Amendment protections. *Jarrett*, 338 F. 3d at 344. These factors are: (1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation. Id. at 344-45; (referencing *United States v. Paige*, 136 F.3d 1012, 1017-18 (5th Cir. 1998); *United States v. Feffer*, 831 F.2d 734, 739 (7th Cir. 1987); and *United States v. Walther*, 652 F.2d 788, 791-92 (9th Cir. 1981)). The Fourth Circuit Court of Appeals has taken this two-factor test and compressed into "one highly pertinent consideration." *Id. See also Ellyson*, 326 F.3d at 527 ("One highly pertinent consideration is 'whether the government knew of and acquiesced in the intrusive conduct and whether the private party's purpose for conducting the search was to assist law enforcement efforts or to further her own ends.'" (quoting *Feffer*, 831 F.2d at 739)).

However, the Fourth Circuit requires evidence of more than mere knowledge and passive acquiescence by the Government before finding an agency relationship. *See Ellyson*, 326 F.3d at 527-28. Other Circuit Courts of Appeals have reasoned similarly. *See, e.g.*, *United States v. Smythe*, 84 F.3d 1240, 1242-43 (10th Cir. 1996) ("Knowledge and acquiescence . . . *encompass the requirement* that the government must also affirmatively encourage, initiate or instigate the private action." (citation omitted) (emphasis added)); *United States v. Koenig*, 856 F.2d 843, 850

(7th Cir. 1988) ("It is only by the exercise of some form of control that the actions of one may be attributed to another. Mere knowledge of another's independent action does not produce vicarious responsibility absent some manifestation of consent and the ability to control." (citations omitted)); *Walther*, 652 F.2d at 792 ("Mere governmental authorization of a particular type of private search in the absence of more active participation or encouragement is similarly insufficient to require the application of Fourth Amendment standards." (citations omitted)). "Viewed in the aggregate, then, three major lessons emerge from the case law." *Jarrett*, 338 F.3d at 345. "First, courts should look to the facts and circumstances of each case in determining when a private search is in fact a Government search." Second, the Government must have known of and acquiesced in the private search and the private agent must have intended to assist law enforcement authorities. *Id*. "Finally, simple acquiescence by the Government does not suffice to transform a private search into a Government search." *Id*. at 345-6. There must be some evidence of Government participation in or affirmative encouragement of the private search for an agency relationship to exist. *Id*. "Passive acceptance by the Government is not enough." *Id*.

Upon information and belief, leaving the Government to its burden of proof, it appears that information is supplied by law enforcement to the Microsoft Corporation (including Microsoft Bing Image) to identify potentially suspicious information contained within searches initiated in the Microsoft Bing Image search engine. Microsoft takes that information knowing the purpose for which it is supplied, aware of its role in the law enforcement process, and acts as an agent for the government in collecting information which is intended and anticipated to be used in criminal prosecutions. The government also knows how Microsoft Bing Image will use the information and expects Microsoft Bing Image to use the information as the government intended – to collect information from private searches within the Microsoft Bing search engine which may be used in

criminal prosecutions. The defendant believes that both predicate considerations will be found in this case as to Microsoft Bing Image, and as such, Microsoft was acting either as a government entity or a government agent.

## MICROSOFT BING IMAGE CONDUCTED AN ILLEGAL SEARCH OF MR. JEFFERY'S SEARCH ENGINE HISTORY IN VIOLATION OF THE FOURTH AMENDMENT

The Fourth Amendment protects against unreasonable searches and seizures by Government officials and those private individuals acting as "instruments or agents" of the Government. *See* U.S. Const. amend. IV; *Coolidge*, 403 U.S. at 487. It does not provide protection against searches by private individuals acting in a private capacity. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (holding that the Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official" (internal quotation marks and citation omitted)). Thus, "'evidence secured by private searches, even if illegal, need not be excluded from a criminal trial.'" *Ellyson*, 326 F.3d at 527 (quoting *United States v. Kinney*, 953 F.2d 863, 865 (4th Cir. 1992)); *see also United States v. Walter*, 447 U.S. 649, 656 (1980) ("[A] wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and . . . such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully." (citing *Coolidge*, 403 U.S. at 487-90)). The Fourth Amendment is a personal right that must be invoked by an individual. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citing *Katz v. United States*, 389 U.S. 347, 351 (1967)). An individual's "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection ... has a legitimate expectation of privacy in the invaded place." *Id*. (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). A person has a legitimate expectation of privacy where: 1) that person has a subjective expectation of privacy and 2) that

expectation is one society is willing to recognize as reasonable. *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir.) cert. denied, 134 S. Ct. 832 (2013). Upon a motion to suppress, "[t]he burden of showing a reasonable expectation of privacy in the area searched rests with the defendant." *United States v. Gray*, 491 F.3d 138, 144 (4th Cir. 2007).

The Fourth Circuit held in *United States v. Bynum*, 604 F.3d 161 (4th Cir. 2010), that a defendant does not have a subjective expectation of privacy in his internet and phone subscriber information because by "voluntarily convey[ing] all this information to his internet and phone companies . . . , [a defendant] 'assume[s] the risk that th[os]e compan[ies] would reveal [that information] to police,'" *id.* at 164 (quoting *Smith v. Maryland*, 442 U.S. 735, 744 (1979)).

In the instant case, it is unclear from the discovery how Microsoft Bing Image obtained the information leading to the arrest of Mr. Jeffery. Upon information and belief, the allegation is that Mr. Jeffery entered certain search terms into the Microsoft Bing Image search engine, and images with certain hash values were contained in the results of the search. Some of the hash values associated with the images indicated to Microsoft Bing Image that the images potentially contained child pornography. While the Fourth Circuit has held a defendant does not have an expectation of privacy in his IP address or service providers, Mr. Jeffery certainly maintained a reasonable expectation of privacy in the contents of his internet search queries, as well as the contents of the results of the search queries, and the hash values associated with the results of the internet search queries. As such, Microsoft Bing Image's intrusion into the contents of Mr. Jeffery's protected private searches and the contents and hash values of the results of those searches constituted a search in violation of the Fourth Amendment. *See, e.g.*, *United States v. Warshak*, 631 F.3d 266, 283-88 (6th Cir. 2010) (finding Fourth Amendment protection for <u>contents</u> of emails) (emphasis added).

## NCMEC IS A GOVERNMENT ENTITY OR, IN THE ALTERNATIVE, NCMEC IS A GOVERNMENT AGENT

The issue of whether NCMEC is a governmental entity or a government agent has not yet been decided by the Fourth Circuit. Other courts, however, provide guidance here. In *United States v. Powell*, the First Circuit Court of Appeals assumed without analyzing that NCMEC was a Governmental Entity or Government Agent. 925 F.3d 1, 5 (1st Cir. 2018) (holding, however, that NCMEC's search of the defendant's chat conversations did not exceed the scope of a private entity's prior search and thus did not violate the Fourth Amendment under the private search doctrine). The District Court of Massachusetts in *United States v. Keith*, 980 F. Supp. 2d 33 (D. Mass. 2013) held, by contrast, that NCMEC was a government entity whose search exceeded the scope of the original search by a private entity. The Tenth Circuit has also held NCMEC is a governmental entity in *United States v. Ackerman*.[3] For the reasons set forth in *Ackerman*, 831 F.3d 1292, 1295-1304, NCMEC was clearly acting as a Government entity or Agent in the instant case.

## NCMEC CONDUCTED AN ILLEGAL SEARCH OF MR. JEFFERY'S SEARCH ENGINE HISTORY IN VIOLATION OF THE FOURTH AMENDMENT

As discussed above, Mr. Jeffery maintains a reasonable expectation of privacy in the contents of his search engine queries and the contents of the results thereof. It is clear that NCMEC performed an examination of the files sent by Microsoft Bing Image in this case. Thus, NCMEC conducted a warrantless search of these images in violation of Mr. Jeffery's Fourth Amendment rights. However, if this Court believes Microsoft Image Bing is a private entity, *Ackerman* suggests NCMEC's actions still may not be protected under the private search doctrine. In *Ackerman*, NCMEC received an email from AOL in which AOL had classified one attached image in the email as potential child

---

[3] The Tenth Circuit's analysis of this issue is extensive. *See Ackerman*, 831 F.3d 1292, 1295-1304.

pornography. 831 F.3d 1292 (10th Cir. 2016). Upon receipt of the email, NCMEC opened all of the images in the email that AOL had not previously opened and determined every image contained child pornography. *Id.* The Tenth Circuit held that NCMEC's search was not protected by the private search doctrine because NCMEC's search had expanded well beyond the original search conducted by AOL. *Id.* at 1306. It is not clear from the discovery what differences, if any, exist between Microsoft Bing Images's search of the contents of Mr. Jeffery's private search engine queries (and the contents of the results thereof) and NCMEC's searches. The discovery is deplete of any reports run by Microsoft Bing Image and thus there is no real data to compare the two searches other than what NCMEC claims. It appears, at the very least, that NCMEC performed additional hash value analysis above and beyond that of Microsoft. An evidentiary hearing is needed to determine whether NCMEC's search exceeded the scope of Microsoft Image Bing's search.

## CONCLUSION

Both Microsoft Bing Image and NCMEC were working as governmental entities or agents of the government when they conducted searches of the contents of the search engine queries and the contents of the results of the search engine queries (specifically the images purportedly depicting child pornography leading to the arrest of Mr. Jeffery) in this case. Mr. Jeffery had a reasonable expectation of privacy in the contents of the search queries, the contents of the results of the search queries, and the associated hash values of the results of the search queries. Thus, under the Fourth Amendment, these searches were improper without first obtaining a warrant supported by probable cause and the evidence seized as a result of those unconstitutional searches should be suppressed. An evidentiary hearing is needed to determine the scope of the searches conducted by both Microsoft Bing Image

and NCMEC.[4] Wherefore, Defendant respectfully requests this Honorable Court calendar this matter for hearing.

Respectfully submitted, this the 16th day of November, 2021.

TARLTON|POLK PLLC

/s/ J. Brad Polk
J. Brad Polk
Attorney for Defendant
N.C. State Bar # 36998
bpolk@tarltonpolk.com
P. O. Box 1386
Raleigh, NC 27602
919-984-6464 (TEL)
919-400-4200 (FAX)

*Designation: Retained*

---

[4] An evidentiary hearing is also necessary to determine whether Microsoft Bing Image or NCMEC invaded any other privacy interests of Mr. Jeffery under the Fourth Amendment, as the methods employed by both agencies are not made clear in their reports.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date shown below, he electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification to Assistant United States Attorney Jake Pugh.

This the 16th day of November, 2021.

/s/ J. Brad Polk<br>
J. Brad Polk