IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CR-464-D
No. 5:25-CV-769-D

| | | |
|---|---|---|
| WILLIAM ROBERT JEFFERY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On November 24, 2025, William Robert Jeffery ("Jeffery" or "petitioner") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction and 192-month sentence for access with intent to view child pornography [D.E. 161] and filed a supporting affidavit [D.E. 162]. On January 12, 2026, the United States moved to dismiss Jeffery's section 2255 petition for failure to state a claim upon which relief can be granted [D.E. 165] and filed a supporting memorandum [D.E. 166]. See Fed. R. Civ. P. 12(b)(6). That same day, the court notified Jeffery that he had until February 4, 2026, to respond [D.E. 167]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On February 24, 2026, Jeffery responded [D.E. 168]. On May 26, 2026, Jeffery moved for a certificate of appealability [D.E. 169]. On May 27, 2026, the court dismissed as premature Jeffery's motion for a certificate of appealability [D.E. 170]. As explained below, the court grants the United States' motion to dismiss, dismisses Jeffery's section 2255 petition, and denies a certificate of appealability.

I.

On October 15, 2020, a federal grand jury in the Eastern District of North Carolina indicted Jeffery and charged him with access with intent to view child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). See [D.E. 1]. On December 2, 2020, the grand jury returned a superseding indictment charging Jeffery with access with intent to view child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). See [D.E. 18]. On December 7, 2022, the grand jury returned a second superseding indictment against Jeffery, charging Jeffery with access with intent to view child pornography in count one. See [D.E. 88] 1. Between the original indictment and the second superseding indictment, Jeffery moved to continue his arraignment ten times. See [D.E. 16, 24, 27, 35, 38, 43, 48, 53, 59, 66]. The court granted each motion and excluded time under the Speedy Trial Act. See [D.E. 17, 25, 28, 36, 39, 44, 50, 54, 60, 67].

On October 20, 2020, Jeffery requested discovery and all exculpatory evidence from the United States. See [D.E. 7]. On November 16, 2021, Jeffery moved to suppress "any and all evidence seized from an illegal search by both Microsoft Bing Image and the National Center for Missing and Exploited Children . . . of the contents of [Jeffery's] search engine queries, the contents of the search results of said search engine queries, and the hash values associated with the results of search engine queries." [D.E. 45] 1. On December 10, 2021, the United States responded in opposition. See [D.E. 51]. On June 24, 2022, the court held an evidentiary hearing about Jeffery's motion. See [D.E. 74]. At the end of the hearing, the court denied Jeffery's motion. See [D.E. 76].

On December 1, 2022, the United States filed notice that Christopher Chappell ("Chappell") would testify as an expert witness. See [D.E. 84] 1. On December 7, 2022, the United States filed notice of its intent to introduce evidence under Federal Rule of Evidence 404(b).

See [D.E. 87]; Fed. R. Evid. 404(b). On December 9, 2022, Jeffery moved for a bill of particulars. See [D.E. 92]. Jeffery sought "more specific information about which internet search(es), clicks, or chatroom activity form[ed] the basis of the charge" and "more specific information about the dates associated with the computer data or actions the Government believe[ed] constitute[d] the 'access with intent to view.'" Id. at 2. On December 9, 2022, the United States responded in opposition. See [D.E. 96]. On December 11, 2022, Jeffery objected to the United States introducing Rule 404(b) evidence. See [D.E. 97]. On December 15, 2022, Jeffery moved in limine to exclude evidence under Federal Rule of Evidence Rule 403, including images, the contents of Jeffery's hard drive, and interview statements Jeffery made in 1999. See [D.E. 104] 2–7.

On December 16, 2022, the court denied Jeffery's motion for a bill of particulars, motion in limine, and motion to dismiss. See [D.E. 107]. That same day, the jury trial began. See id. On December 19, 2022, the jury convicted Jeffery of access with intent to view child pornography. See [D.E. 110, 113].

On February 14, 2023, probation filed a draft Presentence Investigation Report ("PSR"). See [D.E. 118]. On February 28, 2023, Jeffery filed objections to the draft PSR. See [D.E. 120]. On March 24, 2023, probation filed Jeffery's PSR and did not alter the PSR because of Jeffery's objections. See [D.E. 122]. That same day, Jeffery filed a sentencing memorandum. See [D.E. 124].

On March 31, 2023, the court held Jeffery's sentencing hearing. See Sentencing Transcript ("Sent. Tr.") [D.E. 136]; [D.E. 125]. The court confirmed Jeffery's competency and that Jeffery discussed the PSR with his lawyer. See Sent. Tr. 2–4. The court asked Jeffery's lawyer if he wanted to be heard on Jeffery's objections. See id. at 4. Jeffery's lawyer responded that Jeffery was "not asking to be heard outside of what [Jeffery] filed." Id. Likewise, the United States opted

not to be heard on the objections. See id. The court adopted the facts in the PSR, overruled all of Jeffery's objections, and explained its rationale. See id. at 4–11; [D.E. 125]. The court then calculated Jeffery's advisory guideline range to be 168 to 210 months. See Sent. Tr. 11.

The court heard arguments about the 18 U.S.C. § 3553(a) factors from the United States and Jeffery. See id. at 11–16. The court also asked Jeffery if he wanted to allocute, but Jeffery declined. See id. at 13. The court then allowed the victims to allocute, but the United States informed the court that no victims wanted to allocute. See id. at 13–14. After thoroughly considering all relevant section 3553(a) factors, the court sentenced Jeffery to 192 months' imprisonment. See id. at 16–20.

On April 12, 2023, Jeffery appealed. See [D.E. 128]. On November 22, 2024, the United States Court of Appeals for the Fourth Circuit affirmed Jeffery's conviction and sentence. See United States v. Jeffery, No. 23-4264, 2024 WL 4866686, at *6 (4th Cir. Nov. 22, 2024) (unpublished); [D.E. 158]. On December 16, 2024, the Fourth Circuit issued its mandate. See [D.E. 159].

On November 24, 2025, Jeffery moved pro se under section 2255 to vacate, set aside, or correct his conviction and sentence. See [D.E. 161]. Jeffery alleges that his counsel rendered ineffective assistance by failing to (1) protect Jeffery's Sixth Amendment right to a speedy trial, (2) properly prepare for the United States' expert witness, (3) properly investigate, (4) obtain Jencks Act material, (5) obtain favorable witnesses, (6) protect Jeffery's right to due process, (7) properly mitigate at sentencing, and (8) raise certain issues on appeal. See id. at 4–11.

On January 12, 2026, the United States moved to dismiss Jeffery's section 2255 petition. See [D.E. 165]. On February 24, 2026, Jeffery responded in opposition. See [D.E. 168].

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. Fed. R. Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (cleaned up). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United

States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Jeffery must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citation omitted). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (cleaned up). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether

an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (cleaned up).

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 466 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional 'prejudice' requirement" on the "conclusion that 'an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Id. at 112 (citation omitted).

A.

Jeffery alleges deficient performance because his counsel failed to protect his right to a speedy trial. See [D.E. 161] 4. Specifically, Jeffery contends that "he had been in custody since October 20, 2020," and he asked his lawyer "multiple times to file a petition for a speedy trial." Id.

To the extent that Jeffery alleges that his Sixth Amendment right to a speedy trial or his Speedy Trial Act rights were violated, Jeffery procedurally defaulted these claims. See Jeffery, 2024 WL 4866686, at *3–6. In his appeal, Jeffery argued that the court erred in denying Jeffery's suppression motion and denying Jeffery's motion for a bill of particulars. See id. Section 2255 "imposes tight procedural constraints" on the scope of a movant's claims. Fernandez v. United States, 146 S. Ct. 1292, 1300 (2026). "[C]laims not raised on direct review are procedurally defaulted unless the prisoner can demonstrate cause and prejudice, or else actual innocence." Id. (cleaned up); see Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Fugit, 703 F.3d 248, 253 (2012); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). On direct appeal, Jeffery did not argue that his right to a speedy trial was violated, and he has not plausibly alleged cause and prejudice or actual innocence to excuse this failure. Thus, Jeffery's claims fail.

Alternatively, the Speedy Trial Act provides that "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). On October 15, 2020, the grand jury returned Jeffery's indictment. See [D.E. 1]. On October 21, 2020, Jeffery made his initial appearance. See [D.E. 8]. Thus, Jeffery's speedy trial clock started on October 21, 2020.

Jeffery's trial did not occur until December 16, 2022. See [D.E. 107]. Jeffery's trial was delayed because Jeffery moved to continue his arraignment ten times. See [D.E. 16, 24, 27, 35, 38, 43, 48, 53, 59, 66]. Jeffery moved for six of those continuances so Jeffery's lawyer could

"review discovery, conduct legal research, meet with [Jeffery], and determine the merits for filing any pre-trial motions." [D.E. 16, 24, 27, 35, 38, 43]. On November 16, 2021, Jeffery moved to suppress evidence. See [D.E. 45]. Jeffery moved for four more continuances because of his motion to suppress. See [D.E. 48, 53, 59, 66]. The court excluded time under the Speedy Trial Act for each continuance.

If Jeffery's lawyer raised a Speedy Trial Act claim, the claim would have been meritless. "A district court may exclude [pretrial] motion preparation . . . if [the district court] grants a continuance." Bloate v. United States, 559 U.S. 196, 214 (2010). Furthermore, "delay resulting from any pretrial motion" is excludable under the Speedy Trial Act. 18 U.S.C. § 3161 (h). Trial counsel is not ineffective for not raising a meritless claim. See Knowles v. Mirzayance, 556 U.S. 111, 124–25 (2009); Clanton v. Bair, 826 F.2d 1354, 1359 (4th Cir. 1987). Thus, Jeffery fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91. The same conclusion applies to any claim under the Speedy Trial Clause. See, e.g., Vermont v. Brillon, 556 U.S. 81, 89–91 (2009); Doggett v. United States, 505 U.S. 647, 651 (1992); Barker v. Wingo, 407 U.S. 514, 531, 34–36 (1972).

Alternatively, Jeffery does not plausibly allege that if his lawyer filed a motion under the Speedy Trial Clause or Act, it is reasonably likely the results of the proceedings would have been different. See Harrington, 562 U.S. at 111; Strickland, 466 U.S. at 696. Thus, Jeffery fails to plausibly allege prejudice. See Strickland, 466 U.S. at 687–96.

B.

Jeffery alleges deficient performance because his lawyer did not "properly prepare[] a re-buttal [sic] for the [g]overnment's forensic witness." [D.E. 161] 5. Jeffery specifically alleges

that Detective Christopher Chappell ("Detective Chappell") was improperly qualified as an expert witness at trial and "if adequate questions had been asked it would have shown to be as such." Id. at 5–6.

To the extent that Jeffery alleges that Detective Chappell was improperly qualified as an expert witness, Jeffery did not raise this claim on direct appeal. See Jeffery, 2024 WL 4866686, at *3–6. Thus, Jeffery's claim is procedurally barred. See Massaro, 538 U.S. at 504; Bousley, 523 U.S. at 621; Fugit, 703 F.3d at 253; Sanders, 247 F.3d at 144.

Jeffery also fails to plausibly allege deficient performance. On cross examination, Jeffery's lawyer attempted to undermine Detective Chappell's credibility. For example, Detective Chappell conceded that he could not remember details. See, e.g., [D.E. 135] 8–9. Furthermore, Detective Chappell conceded that someone other than Jeffery could have accessed the computer with the incriminating evidence. See id. at 9. During his testimony, Detective Chappell also "could not tell a Dell laptop from a MacBook Pro." [D.E. 161] 5; see [D.E. 134] 130–31. Detective Chappell also was not familiar with the Windows utility cleanup.exe. See [D.E. 161] 6; [D.E. 134] 92.

"In a classic case of Monday morning quarterbacking, [Jeffery] wishes his [lawyer] had managed his defense differently." United States v. Laffitte, 121 F.4th 472, 487 (4th Cir. 2024). Jeffery's lawyer made tactical decisions about how to cross examine Detective Chappell, which is not deficient performance. See, e.g., Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003) (per curiam); Strickland, 466 U.S. at 689–901; United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014); United States v. Chapman, 593 F.3d 365, 369–370 (4th Cir. 2010). Jeffery fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91; United States v. Terry, 366 F.3d 312, 318 (4th Cir. 2004).

Alternatively, Jeffery alleges that "had . . . counsel properly prepared for [Detective Chappell's testimony], it would be clear that the testimony was misleading." [D.E. 161] 6. Even if true, Jeffery does not plausibly allege prejudice. See Harrington, 562 U.S. at 111; Strickland, 466 U.S. at 687–96.

C.

Jeffery alleges deficient performance because his "counsel failed to investigate key facts in his case." [D.E. 161] 6. Jeffery contends that an investigation would have revealed that "there [was] no direct evidence that [Jeffery] actually knew that child pornography was downloaded on the work laptop" and that the chatroom Jeffery visited had "little to no legal troubles." Id. at 7. Although counsel must conduct an objectively reasonable investigation, "Stickland does not require counsel to investigate every conceivable line of mitigating evidence." Wiggins v. Smith, 539 U.S. 510, 533 (2003). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Stickland, 466 U.S. at 692.

Jeffery's lawyer addressed every issue Jeffery now cites. For example, during closing argument, Jeffery's lawyer told the jury that the chatroom Jeffery visited was "a legitimate adult pornography website" and questioned the reliability of Detective Chappell's testimony. [D.E. 135] 54–57. Moreover, Jeffery's lawyer elicited testimony from another investigator that no investigator followed up with Jeffery's employer about the employer's remote access to Jeffery's laptop. See id. at 37–38. Furthermore, Jeffery's lawyer argued during closing argument that the United States "had not shown [that Jeffery] knowingly accessed . . . child porn[ography.]" Id. at 58.

More investigation would have been "fruitless." Harrington, 562 U.S. at 108. Jeffery fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91.

Alternatively, the parties argued about remote access, the chatroom's legitimacy, Detective Chappell's reliability, and the lack of evidence establishing knowing access at trial. The jury weighed the evidence and convicted Jeffery. See [D.E. 110, 113]. Thus, Jeffery has not plausibly alleged prejudice. See Harrington, 562 U.S. at 111; Strickland, 466 U.S. at 687–96.

D.

Jeffery alleges deficient performance because his lawyer "failed to protect his right to Due Process when" his lawyer failed to "request . . . Jencks Material." [D.E. 161] 7. During Jeffery's trial, Thomas Gilliam ("Officer Gilliam"), a former Nags Head Police officer, testified that in 1999, Officer Gilliam interviewed Jeffery, and Jeffery conceded "that on a couple of occasions [pornographic] pictures of children and animals had popped up on his computer." [D.E. 134] 61–62. On cross examination, Officer Gilliam testified that he had notes from the interview, but he did not know if the United States had those notes. See id. at 65–66. Jeffery argues that his lawyer's performance was deficient because Jeffery's lawyer did not obtain Officer Gilliam's notes. See [D.E. 161] 7–8.

The Jencks Act requires that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500. On October 20, 2020, Jeffery filed a discovery request. See [D.E. 7]. Jeffery's lawyer specifically requested that the United States "[p]roduce immediately all statements, memoranda, and/or documents producible under 18

U.S.C.A. § 3500 (1983)." Id. at ¶ 19. Jeffery's allegation that his lawyer did not ask for Jencks Act material is "patently . . . false." United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005). Thus, Jeffey fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91.

Alternatively, Jeffery alleges that during the United States' closing argument, the United States argued that Jeffery "had a 23-year history of seeking images online" of children. [D.E. 161] 8. Jeffery argues that if his lawyer "requested Gilliam's files," the lawyer could have "made clear" that the United States made false claims in its closing argument. Id. Jeffery, however, does not plausibly allege that Gilliam's notes had evidence that Jeffery's lawyer could have used to demonstrate falsity, and thus fails to plausibly allege prejudice. See, e.g., Wiggins v. Smith, 539 U.S. at 537; Strickland, 466 U.S. at 687–96; Williams v. Stirling, 914 F.3d 302, 317 (4th Cir. 2019). Thus, the claim fails.

E.

Jeffery alleges deficient performance because his lawyer failed to call favorable witnesses and instead called FBI Special Agent Tyson Hanish ("Hanish"). See [D.E. 135] 31–38. According to Jeffery, "Hanish was seated with the" United States, and Jeffery's lawyer made a "poor decision" calling Hanish as a witness. [D.E. 161] 8. Jeffery also alleges deficient performance because his lawyer asked Hanish "no questions that had definitive answers," which "did more harm than favor to" Jeffery. Id. at 8–9.

As for Jeffery's argument that his lawyer failed to call favorable witnesses, Jeffery does not explain "what additional witnesses could have been called, nor what their testimony would have been." United States v. Nance, 925 F.2d 1458, at *1 (4th Cir. 1991) (per curiam)

(unpublished table decision). Thus, Jeffery does not plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91.

As for Jeffery's argument that his lawyer should not have called Hanish as a witness and improperly questioned Hanish, Jeffery's lawyer used Hanish's testimony to refute evidence that the United States offered. Hanish conceded that when Jeffery said, "[Y]oung girls are attractive, they're beautiful," the detectives questioning Jeffery did not specify an age range. [D.E. 135] 34–35. Hanish also conceded that Jeffery "had a friend that would occasionally stay with" Jeffery, and investigators never questioned Jeffery's friend. Id. 36–37. Jeffery's lawyer made tactical decisions at Jeffery's trial that created a path to possible acquittal. See, e.g., Terry, 366 F.3d at 318. Thus, Jeffery fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91. Alternatively, Jeffery does not plausibly allege prejudice resulting from his lawyer's questions to Hanish or witness decisions. See Harrington, 562 U.S. at 111; Strickland, 466 U.S. at 687–96.

F.

Jeffery alleges that the probation office violated Federal Rule of Criminal Procedure 32(e)(2). See [D.E. 161] 9. Rule 32(e)(2) requires the probation officer to "give the [PSR] to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing unless the defendant waives this minimum period." Fed. R. Crim. P. 32(e)(2). Jeffery alleges that he "was never given the [PSR], rather his counsel elected to just tell him the nature of what he was going to object to." [D.E. 161] 9.

To the extent Jeffery alleges that the probation office violated Rule 32(e)(2), Jeffery did not raise this claim on direct appeal. See Jeffery, 2024 WL 4866686, at *3–6. Thus, Jeffery's

claim is procedurally barred. See Massaro, 538 U.S. at 504; Bousley, 523 U.S. at 621; Fugit, 703 F.3d at 253; Sanders, 247 F.3d at 144.

To the extent Jeffery alleges deficient performance because Jeffery's lawyer did not show him the PSR, at Jeffery's sentencing hearing, Jeffery's lawyer confirmed that he received a copy of the PSR. See Sent. Tr. 4. Jeffery also confirmed that he spoke with his lawyer about the PSR. See id. Jeffery and his lawyer's statements "unequivocally demonstrate that the [PSR] has been read and discussed by them." United States v. Miller, 849 F.2d 896, 898 (4th Cir. 1988); cf. Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity."); Lemaster, 403 F.3d at 221 (same). Thus, Jeffery fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91.

Alternatively, Jeffery does not plausibly allege how receiving the PSR would provide a reasonable probability of a different outcome. See Harrington, 562 U.S. at 111; Strickland, 466 U.S. at 696; United States v. Anderson, 773 F. App'x 127, 130 (4th Cir. 2019) (per curiam) (unpublished). Notably, in sentencing Jeffery, the court considered nearly every 18 U.S.C. § 3553(a) factor. See Sent. Tr. 16–20. The court considered the serious nature of Jeffery's conduct, his criminal history, and how accessing child pornography "promote[s] the production of more." Id. at 18. The court also considered "the hell that [sexually exploited] children [have] to go through." Id. The court did not exclusively consider the PSR's advisory guideline range in sentencing Jeffery. In fact, the court explained that it would "impose the same sentence as an alternative variant sentence if [the court] in any way miscalculated the advisory guideline range." Id. at 25; see, e.g., United States v. Gomez-Jimenez, 750 F.3d 370, 385–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 161–62 (4th Cir. 2012). Thus, Jeffery fails to plausibly allege prejudice. See Strickland, 466 U.S. at 687–96.

## G.

Jeffery alleges deficient performance because at Jeffery's sentencing hearing, his lawyer did not "attempt to be heard in open court as to any of the objections" to the PSR that the lawyer filed. [D.E. 161] 9–10. On February 28, 2023, Jeffery's lawyer filed 18 objections to the draft PSR. See [D.E. 120] 1–11. Jeffery's lawyer raised factual objections to: (1) probation's "summary that NCMEC provided a CyberTip report to law enforcement that someone using Microsoft program, Bing Image, had uploaded child pornography on at least five occasions between November 2006 and January 2020," (2) "the statement that when officers asked about the ages of the children, [Jeffery] replied, 'I am not going to tell you that young girls are not attractive, because they are beautiful,'" (3) "the inclusion of [23 images] in the image count because they are not relevant conduct to the offense of conviction," (4) "the characterization of . . . [two specific] images as sadistic and masochistic material," (5) the statement that "a number of the aforementioned pictures, which dated back to November 2006, were recovered from the Defendant's work computer," (6) "the date range" of the relevant conduct, (7) "the statement that [child pornography] was 'received,'" (8) "the characterization of the images as portraying sadistic and masochistic conduct," and (9) "the statement that [Jeffery] 'engaged in a pattern of activity involving the sexual abuse or exploitation of a minor'" Id. at 1–4 (quotations omitted). Jeffery's lawyer also raised sentencing guideline and legal objections that: (1) "there [was] insufficient evidence to show, by a preponderance, that [Jeffery] knowingly possessed, received, or accessed with intent to view child pornography prior to 2019," (2) some of the images did "not qualify as relevant conduct," (3) probation improperly "assigned three points to [Jeffery's] 1999 Dare County convictions for Indecent Liberties with a Child," (4) probation improperly "assigned three points to [Jeffery's] 2000 federal conviction," (5) probation improperly calculated Jeffery's criminal

history category, (6) probation improperly applied "the [four]-level increase for material that portrays sadistic or masochistic conduct or other depictions of violence," (7) probation improperly applied "the [five]-level increase for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor," (8) probation improperly calculated Jeffery's adjusted and total offense level, and (9) probation improperly calculated Jeffery's advisory guideline range. Id. at 4–11.

At Jeffery's sentencing hearing, the court asked Jeffery's lawyer whether he wanted to be heard about the objections. See Sent. Tr. 4. Jeffery's lawyer responded, "I'm not asking to be heard outside what we filed." Id. In Jeffery's written objections to the PSR, Jeffery's lawyer argued in detail why the court should sustain each objection. See [D.E. 120] 1–11. Furthermore, before Jeffery's sentencing hearing, Jeffery's lawyer filed a sentencing memorandum, which included character letters and a list of courses Jeffery completed while incarcerated. See [D.E. 124].

Whether to present objections to a PSR orally or in writing is within "the range of strategies and tactics available to a lawyer." United States v. Ragin, 820 F.3d 609, 620 (4th Cir. 2016). "'Try harder'" or 'do more' is not a Strickland theory." United States v. Flood, 188 F.4th 250, 262 (4th Cir. 2026). Thus, Jeffery fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91.

Alternatively, Jeffery does not plausibly allege any arguments his lawyer could have made orally that "would have compelled . . . a different ruling on the objection[s]." United States v. Powell, 134 F.4th 222, 231 (4th Cir. 2025). Moreover, the court did not exclusively consider the advisory guideline range and would have imposed the same sentence regardless of the advisory guideline range. See Sent. Tr. 16–20, 25; Powell, 134 F.4th at 231–32. Thus, Jeffery fails to plausibly allege prejudice. See Strickland, 466 U.S. at 687–96.

H.

Jeffery alleges deficient performance because his "appellate counsel failed to raise significant and obvious issues" which "they told [Jeffery] would be appealed." [D.E. 161] 11. "[E]ffective appellate advocacy" involves "winnowing out weaker arguments and focusing on those more likely to prevail." Smith v. Murray, 477 U.S. 527, 536 (1986) (quotations omitted). To plausibly allege deficient performance of appellate counsel, Jeffery must plausibly allege that the "ignored issues are clearly stronger than those presented." Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000).

Jeffery alleges deficient performance because his appellate lawyer did not raise a speedy trial claim on appeal. See [D.E. 161] 11. This court, however, continued the arraignment ten times because Jeffery moved to continue the arraignment ten times. See [D.E. 16, 24, 27, 35, 38, 43, 48, 53, 59, 66]. Appellate counsel wisely declined to raise this issue

Jeffery also alleges deficient performance because his appellate lawyer did not challenge Chappell's qualification as an expert witness. See [D.E. 161] 11. When Chappell testified, Chappell had 16 years' experience as a digital forensic examiner, completed the Federal Law Enforcement Training Center's seized computer recovery specialist training certification, and received numerous other qualifications. See [D.E. 134] 70–73. Although Jeffery alleges that Chappell's misidentification of a laptop shows that Chappell was not an expert, Chappell explained that he misidentified the laptop because he took "the hard drive out of" the laptop, and the "brand of the shell of the computer doesn't really matter." [D.E. 135] 15. Appellate counsel wisely declined to raise this issue. See Fed. R. Evid. 702.

Jeffery alleges deficient performance because his appellate lawyer did not appeal the admission of Gilliam's testimony about past offenses. See [D.E. 161] 11. Before Gilliam's testimony about past offenses, the court instructed the jury that evidence of "an act done by [Jeffery] at some time other than that alleged in the indictment is not . . . evidence or proof that [at] another time the defendant performed a similar act or committed a similar act." [D.E. 134] 62. Appellate counsel wisely declined to raise this issue.

Jeffery alleges deficient performance because his appellate lawyer did not appeal the district court's pretrial motion rulings. See [D.E. 161] 11. Jeffery's appellate lawyer, however, raised pretrial motion issues on appeal. See Jeffery, 2024 WL 4866686, at *3–6. Thus, there was not deficient performance.

Jeffery alleges deficient performance because his appellate lawyer did not argue that the United States illegally withheld Gilliam's notes. See [D.E. 161] 11. But during Gilliam's testimony, Gilliam indicated that the United States might not have his notes. See [D.E. 134] 66. Thus, there was not deficient performance.

Jeffery alleges deficient performance because his appellate lawyer did not argue that Jeffery never received the PSR. See [D.E. 161] 11. But under oath, Jeffery testified that he reviewed the PSR with his lawyer. See Sent. Tr. 4. Thus, there was not deficient performance.

Jeffery alleges deficient performance because his appellate lawyer did not appeal the district court's calculation of Jeffery's advisory guideline range. See [D.E. 161] 11. As discussed, the court did not exclusively rely on the advisory guideline range in imposing Jeffery's sentence. See Sent. Tr. 16–20, 25. Thus, there was not deficient performance.

At bottom, Jeffery has not shown that the "ignored issues are clearly stronger than those presented." Bell, 236 at 164. Thus, Jeffery fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91.

Alternatively, the Fourth Circuit rejected the issues that Jeffery raised on appeal. See Jeffery, 2024 WL 4866686, at *3–6. Because Jeffery fails to plausibly allege that the unraised issues on appeal are stronger than the issues he raised, Jeffery has not shown that if his appellate lawyer raised the ignored issues, there was a reasonable probability the outcome would have been different. See, e.g., Davey v. United States, No. 3:12-CR-68, 2021 WL 4494629, at *3 (W.D.N.C. Sept. 30, 2021) (unpublished); Eason v. Clarke, No. 1-CV-297, 2016 WL 5898633, at *8 (E.D. Va. Oct. 6, 2016) (unpublished). Thus, Jeffery fails to plausibly allege prejudice. See Strickland, 466 U.S. at 687–96.

The court finds that reasonable jurists would not find the court's treatment of Jeffery's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

III.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 165], DISMISSES petitioner's motion to vacate, set aside or correct petitioner's sentence [D.E. 161], and DENIES a certificate of appealability.

SO ORDERED. This 26 day of October, 2026.

JAMES C. DEVER III
United States District Judge